532 A.2d 885

**Richard L. WINTERS, Jr. and Marceil A. Winters Cooney, in their individual capacities and as Co–Administrators of the Estate of Leonard Benjamin Winters, Appellants,**

**v.**

**ERIE INSURANCE GROUP, Erie Insurance Exchange, and Erie Insurance Company.**

Superior Court of Pennsylvania.

Argued June 10, 1987.

Filed Oct. 23, 1987.

254

William A. Hebe, Wellsboro, for appellants.

Raymond E. Ginn, Jr., Wellsboro, for appellees.

Before CIRILLO, President Judge, and OLSZEWSKI and HESTER, JJ.

HESTER, Judge:

This appeal involves a dispute as to whether Erie Insurance Company is obligated to pay stipulated damages of $30,000 in uninsured motorist benefits to Richard L. Winters, Jr. and Marceil A. Winters Cooney, appellants. As we are persuaded that the arbitrators' award in favor of Erie Insurance Company was contrary to law, we reverse and direct entry of judgment in the amount of $30,000 in favor of appellants.

The facts are not in dispute. Erie Insurance Company ("Erie"), appellee, issued an automobile insurance policy to appellants which included uninsured motorist coverage. On September 19, 1982, appellants' son, Leonard Benjamin Winters, was killed when he fell from the rear of a 1957 Willys Jeep while his family was cutting firewood at a logging site. The decedent's uncle, Randel Winters, was the operator of the vehicle, which was owned by decedent's grandmother. Decision of board of arbitrators at 1. The vehicle was not covered by any automobile insurance policy. *Id.* at 2. Appellants' claim for uninsured motorist benefits from Erie was submitted to arbitration, with damages stipulated to be $30,000, the maximum coverage under the policy.

On July 17, 1986, the arbitrators entered judgment in favor of Erie on two bases. First, they concluded that the Jeep was not a motor vehicle within the meaning of the policy, reasoning that the Winters' use of the Jeep principally for off-road logging activities precluded characterization of it as a motor vehicle [1] under the following policy language: " 'motor vehicle' ... means any two to six wheel land motor vehicle or trailer except: (a) a vehicle designed

---

1. Ironically, appellants' homeowners insurer refused coverage for the accident because the homeowners policy excluded coverage for accidents involving motor vehicles, and the insurer considered the Jeep to be a motor vehicle.

for use principally off public roads, while not on public roads...." They also found that appellants failed to prove that the vehicle was uninsured. The policy defines an uninsured motor vehicle, in relevant part, as "one for which there is no liability bond or insurance at the time of the accident in the amounts required by the financial responsibility law where the car we insure is principally garaged...." The Court of Common Pleas of Tioga County confirmed the award on September 30, 1986, and this timely appeal followed.

■ Our threshold inquiry involves the proper scope of review as the parties have taken different positions on which standard applies. Erie argues that pursuant to 42 Pa.C.S. §§ 7314 and 7315, the arbitration award cannot be vacated absent a showing of fraud, failure of jurisdiction or other grounds therein enumerated, all of which are clearly inapplicable to this case.

Appellants counter that the applicable standard of review is found in 42 Pa.C.S. § 7302(d)(2), which provides that an arbitrator's award may be modified or corrected where "the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict."

Appellants further contend that Erie waived its right to argue that any other scope of review is applicable since it failed to raise this issue before the trial court. We agree. *McDonald v. Keystone Insurance Co.*, 313 Pa.Super. 404, 407 n. 3, 459 A.2d 1292, 1294 n. 3 (1983); *Kenworthy v. Burghart*, 241 Pa.Super. 267, 271, 361 A.2d 335, 337 (1976) (where standard of review to be applied was not briefed or argued to the lower court, it was abandoned); *see also Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974); *Ropka v. Government Employees Insurance Co.*, 347 Pa.Super. 507, 514, 500 A.2d 1171, 1175 (1985); *Barton v. Penco*, 292 Pa.Super. 202, 203 n. 2, 436 A.2d 1222, 1223 n. 2 (1981). *McDonald* is controlling. The *McDonald* litigants had argued during their trial court proceedings that the scope of review of the arbitrators'

award at issue was a contrary-to-law standard. On appeal, the appellee changed his position regarding the applicable standard of review, contending that a stricter standard governed. We ruled that the issue had been waived and reviewed the award under the contrary-to-law standard.

In this proceeding, Erie specifically argued to the trial court that the standard of review set forth in section 7302(d)(2) applied, and it cited the paragraph in its entirety. Brief of appellee, 9/2/86, at 3–4. Therefore, under *McDonald,* Erie's position that a different standard applies has been waived.

Accordingly, we can modify or correct this award if it was contrary to law and the court would have entered a different judgment had the award been a jury verdict. As the facts in this case are not in dispute, the arbitrators did nothing more than interpret the insurance policy. Interpretation of an insurance policy is a question of law, *Utica Mutual Insurance Co. v. Contrisciane,* 504 Pa. 328, 334, 473 A.2d 1005, 1008 (1984); *see also Houston v. National Mutual Insurance Co.,* 358 Pa.Super. 618, 518 A.2d 311 (1986); *Timbrook v. Foremost Insurance Co.,* 324 Pa.Super. 384, 388, 471 A.2d 891, 893 (1984) ("The construction of a written contract of insurance is a matter of law for the court."), and we do not agree with the arbitrators' interpretation of this policy.

We hold that the construction placed on the insurance contract by the arbitrators is contrary to both common sense and basic legal principles regarding the construction of insurance contracts. Before analyzing the award at issue, these principles require reiteration to provide a contextual background for the process of interpretation.

Policy clauses providing coverage are interpreted in a manner which affords the greatest possible protection to the insured. *Mohn v. American Casualty Co.,* 458 Pa. 576, 326 A.2d 346 (1974); *Burne v. Franklin Life Insurance Co.,* 451 Pa. 218, 301 A.2d 799 (1973); *Eichelberger v. Warner,* 290 Pa.Super. 269, 434 A.2d 747 (1981). The insured's reasonable expectations are the focal point in

reading the contract language. *Collister v. Nationwide Life Insurance Co.*, 479 Pa. 579, 388 A.2d 1346 (1978). In *Collister,* we were admonished:

> Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled. Thus, regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents ... the public has a right to expect that they will receive something of comparable value in return for the premium paid.

*Id.,* 479 Pa. at 594, 388 A.2d at 1353–54; *accord State Automobile Insurance Ass'n v. Anderson,* 365 Pa.Super. 85, 528 A.2d 1374 (1987); *Huffman v. Aetna Life & Casualty Co.,* 337 Pa.Super. 274, 486 A.2d 1330 (1984).

Moreover, the language of an insurance contract should be given its ordinary and usual meaning unless it is clear that some other meaning was intended by the parties. *Sparler v. Fireman's Insurance Co.,* 360 Pa.Super. 597, 607 n. 1, 521 A.2d 433, 438 n. 1 (1987). Thus, clear meaning of language cannot be ignored by the judiciary. *Guardian Life Insurance Co. v. Zerance,* 505 Pa. 345, 479 A.2d 949 (1984).

If, however, the language is contextually or otherwise ambiguous, the insured receives the benefit of the doubt, and the policy language is construed in his favor. *D'Allessandro v. Durham Life Insurance Co.,* 503 Pa. 33, 467 A.2d 1303 (1983); *Musisko v. Equitable Life Assurance Society,* 344 Pa.Super. 101, 496 A.2d 28 (1985). This is so because:

> [W]ords which are unambiguous in one context may become susceptible to more than one interpretation when applied to a particular set of facts, it is incumbent upon the insurance company, as draftor of the policy, to delineate as precisely as possible the full extent of coverage or bear the consequence for failing to do so.

*Techalloy Co. v. Reliance Insurance Co.,* 338 Pa.Super. 1, 7, 487 A.2d 820, 823–24 (1984).

■ The arbitrators in this case determined that the Jeep was not a motor vehicle since it was principally used for

off-road activities. This, however, is not determinative of whether the Jeep was a motor vehicle within the meaning of the policy, which defines motor vehicle as *"any* two to six wheel land motor vehicle except ... a vehicle *designed for use* principally off public roads."  Appellants did not design the Jeep, the manufacturer designed it.  This policy language clearly defines "motor vehicle" not by reference to the *actual* use of the vehicle, but by the use for which the vehicle was *designed.*

The case of *Senft v. Keystone Insurance Co.,* 331 Pa.Super. 38, 41, 479 A.2d 1066, 1068 (1984), provides guidance. There we stated that an unregistered 1966 Ford Sedan was "designed primarily for highway use" even though the owner actually used the vehicle exclusively on his farm. *Cf. Pistorius v. Travelers Insurance Co.,* 348 Pa.Super. 527, 502 A.2d 670 (1985), *allocatur granted,* 512 Pa. 361, 516 A.2d 1186 (1986) (dirt bike that was not designed to be used on public highways and was not equipped for licensing under the Vehicle Code was not a motor vehicle under the former No-fault Motor Vehicle Insurance Act).

The reasonable construction of this clear language provides coverage for a land motor vehicle if the motor vehicle was manufactured for use on public roads, *i.e.,* if it was required to be registered under the Vehicle Code due to its customary use on public roads.  Appellants' Jeep, though not registered at the time of the fatal accident, is a motor vehicle under the Vehicle Code.  *See* 75 Pa.C.S. §§ 1301(a), 1302.  The insureds expected any accident involving an uninsured motor vehicle to be covered by the policy, and they paid for that coverage.

■  The arbitrators also found that appellants failed to prove that the car was uninsured by failing to prove that no other coverage existed for the accident.  Decision of board of arbitrators at 3–4.  That is not what appellants were required to prove under the insurance policy, which states that an uninsured motor vehicle is: "(1) *one for which there is no liability bond or insurance at the time of the accident* in the amounts required by the financial responsi-

bility law where the car we insure is principally garaged; or (2) one for which the insuring company denies coverage or is or becomes insolvent...." [2] Erie does not dispute the fact that the Jeep was *not* insured on an automobile insurance policy. *See* Decision of board of arbitrators at 2 ("The Jeep ... was not ... insured on an auto policy at the time of the accident, nor had it been for a long period of time prior to the accident."); appellee's brief at 17 ("At the time of the accident [the Jeep] ... was not insured under a standard automobile policy.").

Inexplicably, both Erie and the arbitrators view the fact that the Jeep was not listed on an insurance policy as irrelevant. The arbitrators support this view by stating: "In any event, it would be error of law for us to conclude that the mere failure to list the Jeep on some other auto insurance policy meant that Plaintiffs could claim uninsured coverage against Erie. *See State Farm Mutual Automobile Insurance Company v. Williams*, Pa., 392 A.2d 281 (1978)." Decision of board of arbitrators at 3.

The fact that the Jeep was not listed on an automobile policy, however, is precisely what makes it an uninsured motor vehicle under the insurance policy definition. The case cited by the arbitrators, *State Farm Mutual Automobile Insurance Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978), does not require a different result. In fact, *State Farm* supports our conclusion that coverage exists, as the supreme court specifically noted in that case that the protection afforded by uninsured motorist coverage, which is determined by reference to the policy language, may be enhanced beyond that required by the Uninsured Motorist Act. *Id.*, 481 Pa. at 139–40, 392 A.2d at 285.

Thus, the specific policy's language is what we use to determine coverage. *See also Parsons v. State Farm Mutual Automobile Insurance Co.*, 335 Pa.Super. 394, 484

---

**2.** The arbitrators ignored the first definition of an uninsured motor vehicle, and did not mention it in their award. The definition is stated in the alternative, however, and since we hold that the motor vehicle was uninsured within the meaning of clause (1), discussion of clause (2) is unnecessary.

A.2d 192 (1984). In this case, there is no dispute that the owner and operator of the Jeep did not have insurance for the Jeep at the time of the accident. It was, therefore, an uninsured motor vehicle within the meaning of the policy.

Order reversed. It is hereby ordered that judgment in the amount of $30,000 be entered in favor of appellants and against appellee.