599 A.2d 690

**John E. KOENIG and Ellen I. Koenig, His Wife, Appellants,**

**v.**

**PROGRESSIVE INSURANCE COMPANY
and Walter G. Foltz, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1991.

Decided Nov. 26, 1991.

234

James R. Schadel, Pittsburgh, for appellants.

Jeffrey A. Ramaley, Pittsburgh, for Progressive Ins. Co., appellee.

Before CAVANAUGH, BECK and KELLY, JJ.

CAVANAUGH, Judge:

Two issues are presented before us on appeal, one of contract interpretation and one of statutory interpretation. The first issue we must address is whether under an automobile insurance policy providing "per person" coverage for bodily injury as well as a higher "per accident" liability limit, an insurer that has exhausted its "per person" liability to a person sustaining bodily injury in an automobile accident is obligated to make additional payments within the "per accident" limit for loss of consortium by the victim's spouse. The second issue we must address, assuming we find that no such obligation exists, is whether such an insurance contract would be inconsistent with the Motor Vehicle Financial Responsibility Act, 75 Pa.C.S.A. § 1702 *et seq.* We find that the insurance policy treats loss of consortium as arising out of the car accident victim's

claim, and hence total damages are subject to the lower "per person" limitation. We also find that such an insurance contract does not violate the Motor Vehicle Financial Responsibility Act. We affirm.

The facts are as follows: on March 25, 1989, co-appellant John Koenig was seriously injured in an automobile collision when the vehicle he was operating was struck by a vehicle operated by co-appellee Walter Foltz. The automobile Mr. Foltz drove is insured by co-appellee Progressive Insurance Company under a policy issued to his wife, Tina Foltz, covering the car being operated at the time of the accident. It is admitted for the purpose of this appeal that Mr. Foltz was insured under the policy and was negligent in the operation of automobile giving rise to the accident. John Koenig sued both Mr. Foltz and Progressive Insurance Company for his injuries. John Koenig's spouse, co-appellant Ellen Koenig, sued both Foltz and Progressive for loss of consortium, including the loss of services and affection.

The Progressive insurance policy purchased for the Foltz automobile contains coverage limits of $15,000 "per person" and $30,000 "per occurrence." Progressive has offered $15,000 to the Koenigs in full and complete settlement of their claim. The Koenigs refused, asserting that they are eligible for the full $30,000. The case is on appeal from the trial court's order granting Progressive's Motion for Judgment on the Pleadings. The court agreed with Progressive that Ms. Koenig's consortium claim was subject to the "per person" limit in its policy. It held that Progressive was not obligated to pay Ms. Koenig any damages in addition to those it may be obligated to pay her husband.

Appellants first claim that the trial court, in interpreting the insurance contract, disregarded the development of the loss of consortium claim. In Pennsylvania, the loss of consortium has developed from being merely a derivative claim to being a separate and independent injury suffered by the spouse of an injured party for which separate recovery may be had. Appellants assert there is "inherent ambiguity" in the insurance policy. Accordingly, since

"[w]here a provision of a[n insurance] policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement," *Standard Venetian Blind Company v. American Empire Insurance Company,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983), appellants call on us to interpret the policy in light of the development of the consortium tort.

The principles governing the interpretation of insurance contracts in Pennsylvania are well settled. The goal of interpreting an insurance contract is to ascertain the intent of the parties as manifested by the language of the written instrument. *See Standard Venetian Blind, id.,* 503 Pa. at 305, 469 A.2d at 566; *Mohn v. American Casualty Co. of Reading,* 458 Pa. 576, 586, 326 A.2d 346, 351 (1974). The reasonable expectations of the insured are the focal point in reading the contract language. *See Collister v. Nationwide Life Insurance Co.,* 479 Pa. 579, 594, 388 A.2d 1346, 1353 (1978); *Winters v. Erie Insurance Group,* 367 Pa.Super. 253, 257–58, 532 A.2d 885, 887 (1987). Where the language of the contract is clear and unambiguous, a court is required to give effect to that language. *See Standard Venetian Blind, id.* 503 Pa. at 305, 469 A.2d at 566; *Pennsylvania Manufacturers' Ass'n. Insurance Co. v. Aetna Casualty & Surety Co.,* 426 Pa. 453, 457, 233 A.2d 548, 551 (1967). "[The] clear meaning of language cannot be ignored by the judiciary." *Winters, id.* 367 Pa.Super. at 257–258, 532 A.2d at 887 (*citing Guardian Life Insurance Co. v. Zerance,* 505 Pa. 345, 353, 479 A.2d 949, 953 (1984)). Where the language of a contract is ambiguous, the insured receives the benefit of the doubt, and the language at issue is interpreted in his favor. *See D'Allessandro v. Durham Life Insurance Co.,* 503 Pa. 33, 37, 467 A.2d 1303, 1307 (1983); *Winters, id.* 367 Pa.Super. at 257–258, 532 A.2d at 887; *Standard Venetian Blind, id.* 503 Pa. at 305, 469 A.2d at 566. Language in an insurance policy should be given its ordinary meaning, unless it is clear that some other meaning was intended by the parties. *Winters, id.* 367 Pa.Super. at 257–258, 532 A.2d at 887.

*Sparler v. Fireman's Insurance Co.,* 360 Pa.Super. 597, 607 n. 1, 521 A.2d 433, 438 n. 1 (1987). "The policy, like every other contract, must be read in its entirety and the intent gathered from a consideration of the entire instrument." *Smith v. Cassida,* 403 Pa. 404, 408, 169 A.2d 539, 541 (1961); *see also Newman v. Massachusetts Bonding & Ins. Co.,* 361 Pa. 587, 591, 65 A.2d 417, 419 (1949).

■ Progressive's insurance policy states in pertinent part:

### LIMITS OF LIABILITY

The limits of liability shown in the Declarations apply subject to the following:

(1) The **bodily injury** liability limit for "each person" is the maximum we will pay as damages for **bodily injury,** including damages for care and loss of services, to one person in one occurrence.

(2) Subject to the **bodily injury** liability limit for "each person," the **bodily injury** liability limit for "each occurrence" is the maximum we will pay as damages for bodily injury, including damages for care and loss of services, to two or more persons in one occurrence.

(3) The **property damage** liability limit for "each occurrence" is the maximum we will pay for all damages to property, including loss of its use, in one occurrence. We will pay no more than these maximums regardless of the number of vehicles described in the Declarations, **insured persons,** claims, claimants or policies, or vehicles involved in the occurrence. Any amount payable under this coverage to or for an injured person will be reduced by any payment made to that person under the Uninsured Motorists Coverage in this policy. (Emphasis in original policy).[1]

We have examined the language of the contract in its entirety, and after giving each word its ordinary meaning,

---

1. It is pertinent to note that the meaning of each boldfaced word is explained in the policy's definition section. Appellants have left out in their quotation of this section the emphasis placed on certain words by boldface. (Brief of Appellants at 16–17).

we find appellants' contractual arguments without merit. The language of the policy makes unambiguously clear that liability is limited to damages flowing from an individual's bodily injury. As made clear by the description of the liability coverage at the beginning of the policy, the policy pays out only when the insured becomes legally liable for automobile-related bodily injury or property damage. As Part I, Coverage section A states:

> We will pay for damages for which an **insured person** is legally liable <u>because of</u> **bodily injury** or **property damage** resulting from the ownership, maintenance or use, including loading and unloading, of a car or **utility trailer.** (Emphasis in boldface is policy's, emphasis underlined is court's).[2]

■ The Limits of Liability section (text recounted in full *supra*) likewise divides when the policy will pay out into when the insured incurs bodily injury damages (see subsection 1 & 2) and property damages (see subsection 3).[3] The policy's "bodily injury liability limit" is the maximum the policy will pay for "bodily injury" "to one person in one occurrence."[4] Although this section provides that "damages for care and loss of services" are covered, such damages are also subject to the "maximum that we will pay" for each person. The words of the policy therefore make unequivocally clear that all liability sustained from each

2. Webster's Third New International Dictionary (1976) 194 defines "because of" as a preposition meaning "by reason of" or "account of."

3. Consistent with the Coverage and other sections of the policy, "bodily injury" and "property damage" appear in boldface throughout this section.

4. "Bodily injury" is defined in the policy as "bodily injury to or sickness, disease or death of a person." The definition emphasizes that the policy only covers damages resulting from the liability arising from a person's injury in an accident.

    This case differs significantly from precedent in other states where the insurance policy included in the definition of "bodily injury" "loss of services." *See Giardino v. Fierke,* 160 Ill.App.3d 648, 112 Ill.Dec. 559, 513 N.E.2d 1168 (2d Dist.1987); *Allstate Ins. Co. v. Handegard,* 70 Or.App. 262, 688 P.2d 1387 (1984). Where a policy defines "bodily injury" to include "loss of services," the argument is stronger that there exists an ambiguity as to whether the policy considers loss of consortium a separate injury for which the policy will pay.

individual's bodily injury in an automobile accident is subject to a ceiling. The proper ceiling in this case is the $15,000 per person limit and not the $30,000 per occurrence limit.[5] Since we find the insurance policy unambiguous, we cannot, even if so inclined, interpret the policy in light of the development of the tort of loss of consortium.[6]

Pennsylvania courts have consistently interpreted almost exactly the same contractual language in other policies in this fashion.[7] The language in the insurance policy appears to have tracked the language in precedent which favors the

5. This does not indicate that Ms. Koenig can not recover for the tort of loss of consortium. *See Restatement (Second) of Torts,* § 693 (1976). Rather, the question before us is simply how much insurance coverage was contracted for to cover the automobile which hit Mr. Koenig. Although the insurance policy limit has been reached, appellants can still pursue the loss of consortium claim against the tortfeasor.

6. Appellants devote a large part of their brief to an analysis of the development of the tort of loss of consortium from a derivative claim to a claim that is separate and distinct from the injured party's damages. Like the court in *Vickodil, infra,* we acknowledge that under recent developments in Pennsylvania's common law, loss of consortium is a separate and distinct tort from the injured spouse's claim. However, the appellants' emphasis on this development in tort law is like trying to fit a round peg in a square hole. This is a contract issue not a tort issue. When interpreting a contract, our first duty is to ascertain if the contract is unambiguous. Only if we found the contract ambiguous, would we be able to consider the recent development of the consortium tort. Moreover, even if we found the contract was unclear, we would interpret the contract in light of the canons of contract construction, attempting to ascertain the reasonable intent of the parties and interpreting any ambiguity in the insured's favor. It is not clear that this development in tort law would assist us in such a determination.

7. A majority of courts that have addressed this issue have held that a loss of consortium is not bodily injury for purposes of recovering in excess of the "per person" limit of the insurance policy. *See, e.g., Weekley v. State Farm Ins. Co.,* 537 So.2d 477 (Ala.1989); *Campbell v. Farmers Insurance Co. of Arizona,* 155 Ariz. 102, 745 P.2d 160 (App. 1987); *Westfield Ins. Co. v. DeSimone,* 201 Cal.App.3d 598, 247 Cal. Rptr. 291 (4th Dist.1988); *Gillchrest v. Brown,* 532 A.2d 692 (Me.1987); *Bain v. Gleason,* 223 Mont. 442, 726 P.2d 1153 (1986); *Tomlinson v. Skolnik,* 44 Ohio St.3d 11, 540 N.E.2d 716 (1989); *McGovern v. Williams,* 741 S.W.2d 373 (Texas 1987); *Whitney v. Nationwide Mutual Insurance Co.,* 151 Vt. 510, 562 A.2d 467 (1989); *Landsinger v. American Mutual Insurance Co.,* 142 Wis.2d 138, 417 N.W.2d 899 (App. 1987).

insurance company's position. In *Smith v. Cassida,* 403 Pa. 404, 169 A.2d 539 (1961), our Supreme Court was presented with a case that involved a claim by the husband of an injured spouse to receive medical care costs and damages for loss of services from Defendant's insurance company. The injured wife had previously received $10,000 in full settlement of her judgment, and the policy had a per person limit of $10,000 and a per occurrence limit of $20,-000. The company offered the husband a settlement ($500) for his injuries and damage to the automobile, but refused to offer him anything based on his consortium claim.

The policy in that case contained the following language:

4. Limits of Liability

Coverage C(2): **The limit of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of the Company's liability for all damages sustained by one person in any one occurrence.** The limit of such liability stated in the declarations as applicable to 'each occurrence' is, subject to the above provisions respecting each person, the total limit of the Company's liability for all damages sustained by two or more persons in any one occurrence. **Such limits of liability for all damages include damages for care and loss of services arising out of bodily injury, sickness or disease, including death at any time resulting therefrom.**

*Id.,* 403 Pa. at 406–407, 169 A.2d at 540. (emphasis added by the *Smith* Court).

The Court held that:

To us, the pertinent language of the policy is clear that the liability limit intended for bodily injury to one person covered all damages flowing from that one individual's injuries, including the cost of care and the loss resulting from the disability. The recoverable damages, direct and consequential, are essentially due to the bodily injury of one person. They may not be broken up in order to increase the liability limit provided for. The limit of liability applies to the person injured and not to the

person suffering loss. Any other construction would completely annihilate the language of the policy ...

*Smith, id.,* 403 Pa. at 407–408, 169 A.2d at 540–541. The Court additionally noted that the Declarations accompanying the policy expressly provided that the limit of liability for "bodily injury" for "each person" is $10,000. *Id.,* 403 Pa. at 408, 169 A.2d at 540–541. Furthermore, in the body of the policy, it was also stated that "the limit of bodily injury liability stated in the declarations as applicable to each person is the limit of the company's liability for all damages sustained by one person." *Id.,* 403 Pa. at 407–408, 169 A.2d at 540–541.

In the recent case of *Vickodil v. Pennsylvania Ins. Guar. Ass'n,* 356 Pa.Super. 325, 514 A.2d 635 (1986) (*alloc. denied* in 514 Pa. 639, 523 A.2d 346), our court again interpreted wording similar to the wording before us to find a spouse's loss of consortium claim was not covered in a defendant's insurance policy. In *Vickodil,* one spouse was seriously injured in an automobile accident, and the other spouse sued for loss of consortium. Both spouses won substantial jury verdicts, which were reduced to judgment. One of defendant's insurers was insolvent, and the Pennsylvania Insurance Guarantee Association stepped into the shoes of the insolvent insurer pursuant to 40 P.S. § 1701.-101 *et seq.*[8] The Association refused to pay the consortium claim, arguing that under the insolvent insurer's policy, there only existed the obligation to pay for damages arising out of bodily injury. The policy language involved in the case is as follows:

> Bodily Injury Liability Coverage: **The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, because of bodily injury sustained by one person as the result of any one occurrence;** but subject to the above provision respecting "each person," the total

8. 40 P.S. § 1701.101 *et seq.* establishes the Pennsylvania Insurance Guarantee Association, which is obligated to pay out the claims of an insolvent insurer in certain situations.

liability of the company for all damages, including damages for care and loss of services, because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the declarations as applicable to "each occurrence." (Emphasis added). *Vickodil, id.* 356 Pa.Super. at 329, 514 A.2d at 637.

Relying almost exclusively on the rationale expressed in *Smith, supra,* the Court found that the contract did not give appellant a consortium action.

Appellants vainly try to distinguish *Smith* and *Vickodil.* The appellants distinguish *Smith* as a thirty-year old case that has not kept up with recent court rulings "which reflect an updated interpretation of the nature of the loss of consortium claim." (Brief for Appellants at 13) Regardless of the recent expansive notion of the tort of loss of consortium, the issue before us is one that sounds in contract, not in tort. Consequently, the fact that the *Smith* court found similar insurance policy wording to be unambiguous is important.

The appellants distinguish *Vickodil* as only giving *Smith* cursory treatment and not addressing the issue they raise before this court, e.g., that the loss of consortium is a separate and distinct injury for which recovery may be had. (Brief for Appellants at 13). Moreover, they assert that the holding in *Vickodil* was based on the application of the statute creating the Pennsylvania Insurance Guarantee Association. (Brief for Appellants at 14).

However, a perfunctory reading of *Vickodil* indicates it relied to a large extent on the reasoning in *Smith.* See *Vickodil, id.* 356 Pa.Super. at 330–331, 514 A.2d at 637. Moreover, the *Vickodil* court *did* address the argument that loss of consortium is a separate and distinct injury. The Court found it was a separate and distinct injury in the sense that it was a tort, for which a right of recovery is "unassailable under Pennsylvania law." *Id.* 356 Pa.Super. at 330, 514 A.2d at 637. However, the court also held, as we do today, that it did not follow from the existence of a

tort that liability arose under an insurance contract. Finally, the Association relied on the insolvent insurer's *policy* to negate their obligation to pay for the loss of consortium, not a statutory basis.

■ Appellants also argue that the insurance policy is "inconsistent and repugnant" to the Motor Vehicle Financial Responsibility Act, 75 Pa.C.S.A. § 1702 et seq.. Appellants note that the Act requires insurance policies provide evidence of financial responsibility in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in one accident. See 75 Pa.C.S.A. §§ 1702, 1774 and 1791. Appellants argue that the Act requires insurance policies to have $15,000 for each person injured *resulting* from an accident, subject to a $30,000 aggregate limit. Since Pennsylvania's common law establishes that a spouse has an independent claim for loss of consortium, the policy violates the Act.

We find this argument to be without merit. Section 1702 of the Act provides the following definitions:

'Financial Responsibility.' The ability to respond to damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person *in* any one accident, in the amount of $30,000 because of injury to two or more persons *in* any one accident and in the amount of $5,000 because of damage to property of others *in* any one accident.

\*     \*     \*     \*     \*     \*

'Injury.' Accidentally sustained bodily harm to an individual and *that individual's* illness, disease or death resulting therefrom.

(emphasis added). Section 1774 provides the following:

Payments sufficient to satisfy judgment

(a) General Rule.—For the purpose of this chapter only, judgments shall be deemed satisfied upon the occurrence of one of the following:

(1) When $15,000 has been credited upon any judgment or judgments rendered in excess of that amount *because of injury to one person as the result of any one accident.*

(2) When $30,000 has been credited upon any judgment or judgments rendered in excess of that amount *because of injury to two or more persons as the result of any one accident.*

(3) When $5,000 has been credited upon any judgment or judgments rendered in excess of that amount *because of damage to property of others as the result of any one accident.* (Emphasis added).

The language of the 'Financial Responsibility' definition indicates that the $15,000 and $30,000 limits are for damages emanating from injury to a person(s) injured *in* an accident. Moreover, "injury" is defined as "bodily harm to an individual" and "that individual's" resulting illness, disease or death. The language of § 1774, taken together with the definition of "injury," simply highlights that the damages must be sustained as the result of bodily injury in the accident. We conclude that the Act mandates that a policy provide the above minimums for damages arising from the bodily harm of those involved *in* an automobile accident.[9]

To interpret the Act as appellants would have us do is not only against the clear import of the statutory language, but would have the undeniable effect of forcing insurance companies to raise their automobile insurance rates. Insurance companies under the appellants' suggested regime would be potentially liable for $15,000 worth of additional coverage when an accident victim is married. This would run contrary to the legislature's concern about rising automobile

9. Appellee submits that its insurance policy has been adopted to reflect the minimum amount of coverage allowable under the Motor Vehicle Financial Responsibility Act. Although there does seem to be a parallel between the language used in the policy and the Act, the record is devoid of information upon which we could base this conclusion and therefore the resolution of the contractual issue was based on an interpretation of the policy's language.

insurance rates.[10] To interpret the Act thus would have a decidedly detrimental effect on the affordability of insurance coverage.

We affirm.

---

10.  *See, e.g.,* 75 Pa.C.S.A. § 2001 *et seq.*