Van S. BOWERSOX and Jennie V. Bowersox, his wife, Administrators of the Estate of Paul S. Bowersox, Appellants,

v.

PROGRESSIVE CASUALTY INSURANCE COMPANY, Appellee.

Superior Court of Pennsylvania.

Argued April 17, 2001.
Filed Aug. 3, 2001.

Warren R. Baldys, Williamsport, for appellant.

Daniel Cummins, Scranton, for appellee.

BEFORE: TODD, OLSZEWSKI, and MONTEMURO,* † JJ.

TODD, J.:

¶ 1 The administrators of the estate of Paul S. Bowersox (the "Administrators") appeal the trial court's denial of relief following a determination by a board of arbitrators that Progressive Casualty Insurance Company ("Progressive")[1] is not obligated to pay underinsured motorists benefits under the circumstances of this case. We affirm.

¶ 2 The facts of this case are undisputed. The Administrators brought this suit against Progressive for underinsured motorist coverage. Tragically, Bowersox was killed in a car accident involving three cars. At the time of the accident, he was the passenger in a car driven non-negligently by Heather Lyons. The accident was caused by the joint negligence of Joel Lyons, Heather Lyons' brother, and Matthew Lytle, who were each driving sepa-

---

* Retired Justice assigned to Superior Court.

† Justice MONTEMURO did not participate in the decision of this matter.

1. Appellee asserts that the claim was brought against Mountain Laurel Assurance Company, which was improperly named as Progressive Casualty Insurance Company.

rate vehicles. Heather Lyons also was killed in the accident.

¶3 The vehicles driven by Heather Lyons and Joel Lyons each were covered under a policy of insurance issued by Progressive to their father, Douglas A. Lyons.[2] State Farm insured the vehicle driven by Matthew Lytle. Progressive paid Bowersox's estate the liability limits of $50,000 on behalf of Joel Lyons and State Farm paid the liability limits on the Lytle vehicle. However, as these liability payments did not provide full compensation, the Administrators sought payments from the underinsured motorist coverage in the Lyons' policy based on Bowersox's status as a passenger in the car Heather Lyons was driving. The limit on this coverage was also $50,000. In denying this claim, Progressive cited a "set-off" provision of the policy which reduces any underinsured motorist coverage otherwise payable by the amount of any liability payments made under the policy to the same claimant. Given that Progressive paid $50,000 for liability coverage on behalf of Joel Lyons, the set-off provision, Progressive argued, reduced the amount payable under the underinsured motorist coverage to zero.

¶4 This case was presented on stipulated facts to a board of arbitrators in accordance with the Progressive policy which required arbitration pursuant to the Pennsylvania Arbitration Act of 1927. The arbitrators found for Progressive. The Administrators then filed an Application to Modify or Correct Award of Arbitration with the Court of Commons Pleas of Union County, asserting the arbitrator's award

was contrary to law. By order dated July 25, 2000, the court denied relief, and this timely appeal followed.[3]

■ ¶5 When reviewing a trial court's ruling to vacate or modify an arbitration award, this Court may reverse only for an abuse of discretion or error of law. *Erie Ins. Group v. Shue*, 741 A.2d 803, 806 (Pa.Super.1999), *appeal denied*, 563 Pa. 645, 758 A.2d 1199 (2000). Because the policy at issue provided for arbitration pursuant to the Pennsylvania Arbitration Act of 1927, the trial court was required to review the award under the standard provided by 42 Pa.C.S.A. § 7302(d)(2). *Shue*, 741 A.2d at 806; *see also* 42 Pa.C.S.A. § 7302(d)(2), Historical and Statutory Notes. This standard provides that a trial court shall "modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict." 42 Pa.C.S.A. § 7302(d)(2).

¶6 The Administrators argue that the set-off provision in the Progressive policy cannot be applied to deny their claim for underinsured motorist benefits under the circumstances of this case. They pose several arguments to this effect, which we review in turn.

■ ¶7 The Administrators first argue, given that there were two separate drivers and two separate vehicles involved in the accident and insured by Progressive, that we should find there are two separate policies of insurance—albeit expressed in one document—and thus the set-off provi-

---

**2.** In all, three vehicles were insured under this policy: the two involved in the accident, and a third.

**3.** Although the Administrators initially and improperly appealed the July 25, 2000 order denying relief, they subsequently perfected this appeal by reducing this order to judg-

ment on October 19, 2000, at the request of this Court's Central Legal Staff. *See Johnston the Florist, Inc. v. TEDCO Construction Corp.*, 441 Pa.Super. 281, 657 A.2d 511, 513 (1995) (entry of final judgment during the pendency of an appeal is sufficient to perfect this Court's jurisdiction).

sion would not be triggered. However, contrary to the Administrators' assertions that the Court did not reach the issue, we find the discussion in *Cooperstein v. Liberty Mut. Fire Ins. Co.*, 416 Pa.Super. 488, 611 A.2d 721 (1992), to be persuasive. There, this Court, faced with the same argument involving a policy also insuring multiple vehicles, concluded:

> We decline to find that this single policy should be considered several separate policies. Appellee Jack Cooperstein purchased one automobile insurance policy from appellee Liberty Mutual. This policy insures three vehicles. Appellants have offered no reason to interpret the policy as three separate policies, nor have they indicated caselaw which supports their contention. As such, we find this argument to be without merit.

*Id.* at 725. We are likewise unpersuaded by the Administrators' argument.

■ ¶ 8 The Administrators next argue that even if we conclude there is one policy, the set-off provision is ambiguous "because it does not anticipate an accident in which two vehicles under the same policy are involved" and therefore should be construed against the insurer. (Brief for Appellants, at 17.) We find this argument to be equally unavailing.

■ ¶ 9 In interpreting an insurance contract, our role is clear:

> The interpretation of a contract of insurance is a matter of law for the courts to decide. In interpreting an insurance contract, we must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, we will give effect to the language of the contract.

*Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 586, 640 A.2d 1234, 1235 (1994) (citation omitted). However, a provision is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 201, 519 A.2d 385, 390 (1986); *Gamble Farm Inn, Inc. v. Selective Ins. Co.*, 440 Pa.Super. 501, 656 A.2d 142, 143–44 (1995) (citing *Hutchison*). In such cases, it is well-settled that any ambiguity is to be resolved against the insurer. *Koenig v. Progressive Ins. Co.*, 410 Pa.Super. 232, 599 A.2d 690, 692 (1991) (citing *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983)).

¶ 10 The set-off provision at issue reads: "Any payment under this [underinsured motorist] coverage shall be reduced by any amount that person is entitled to recover under Part I [liability coverage] or Part III [uninsured motorist coverage] of this policy." (Policy, at 30 (R. 21a).) We can find no ambiguity in this language: it clearly states that any underinsured motorist coverage will be reduced "by any amount" a claimant is "entitled to recover" under the liability coverage. As this language is not reasonably subject to any other interpretations, we cannot conclude it is ambiguous. *See Hutchison*, 513 Pa. at 201, 519 A.2d at 390; *Gamble Farm Inn, Inc.*, 656 A.2d at 143–44. Since we find the language is unambiguous, our analysis ends, and we must reject the Administrators' argument on this point.

■ ¶ 11 Finally, and most persuasively, the Administrators argue that even if the set-off provision is unambiguous, it offends public policy as applied to the facts of this case. Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1731 *et seq.* ("PMVRL"), requires all motor vehicle liability policies delivered in this Commonwealth to include uninsured and underinsured motorist coverage in amounts not greater than the liability coverage limits, *see id.* §§ 1731(a), 1736. The Administrators argue that the set-off

provision at issue here operates to eliminate the statutorily-required underinsured motorist coverage for Bowersox under the circumstances of this case, and is therefore against the public policy embodied in that statute.[4] While this argument undoubtedly has appeal, nevertheless, cases of this Court have held set-off provisions like the one here to be enforceable. While these cases dealt with different circumstances, we find their governing principles equally applicable here.

¶ 12 We first address the trial court's resolution of this case. In denying relief to the Administrators, the trial court relied on *Cooperstein v. Liberty Mut. Fire Ins. Co., supra,* and *Wolgemuth v. Harleysville Mut. Ins. Co.,* 370 Pa.Super. 51, 535 A.2d 1145 (1988) (en banc). Based on these cases, the trial court concluded: "An injured plaintiff (or his/her estate) is precluded from recovering under the liability and underinsurance coverages of the same motor vehicle insurance policy. A claimant cannot recover third party liability benefits and underinsured motorist coverage from the same policy." (Order, 7/25/00.) This statement is only partially correct. Rather, a plaintiff cannot recover both liability and underinsured motorist coverage from the same policy where *only one policy of insurance* is implicated under the circumstances. *See Cooperstein,* 611 A.2d at 724; *Wolgemuth,* 535 A.2d at 1149. In *Cooperstein* and *Wolgemuth* only one negligent driver was responsible for the injuries to the claimants. The injured passenger of the negligent driver's vehicle

argued that the driver's insurer *should* provide liability coverage and underinsured motorist coverage, arguing, in effect, that the driver's vehicle was itself underinsured. This Court held that a "family car exclusion" provision prohibiting just such a recovery was not against public policy. The Court reasoned that *two* policies must be implicated for underinsured motorist coverage to come into play, that a policy cannot provide underinsured coverage on itself:

> The language of the statute itself suggests that underinsurance motorist coverage requires the existence of at least *two* applicable policies of motor vehicle insurance. *See* 75 Pa.C.S. § 1731(c). An underinsured motor vehicle, must, by definition, be an insured vehicle. Thus, the statute contemplates one policy applicable to the vehicle which is at fault in causing the injury to the claimant and which is the source of liability coverage (which is ultimately insufficient to fully compensate the victim), and a *second* policy, under which the injured claimant is either an insured or a covered person. It is the *second* policy which the statute contemplates as the source of underinsured motorist coverage, where the liability coverage provided by the first policy of insurance is insufficient to fully compensate the claimant for his injuries.

*Wolgemuth,* 535 A.2d at 1149 (emphasis original); *see also Cooperstein* 611 A.2d at 724 (citing *Wolgemuth* language).[5]

---

4. We have also used the phrase "public policy" in the sense proposed by the Administrators "to indicate that we would interpret particular statutes broadly to help manifest their legislative intent." *Jeffrey v. Erie Ins. Exch.,* 423 Pa.Super. 483, 621 A.2d 635, 640 (1993) (en banc).

5. In *Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234 (1994), our Supreme Court

affirmed this analysis by noting that "[a]llowing the 'family car exclusion' to bar coverage in cases where a plaintiff is attempting to convert underinsured coverage into liability coverage is a limited exception to the general rule that such provisions are invalid as against the policy of the MVFRL." *Id.* at 595, 640 A.2d at 1240.

¶ 13 By contrast, here there *are* two applicable policies of insurance: the Lyons policy and the Lytle policy, the insufficient liability coverage in the latter triggering the underinsured motorist provision of the former.[6] Therefore, the trial court's conclusion that a claimant is precluded from recovering under the liability and underinsured motorist coverages of the same motor vehicle insurance policy *under any circumstances* is incorrect. Nevertheless, the set-off provision which the Administrators here challenge on public policy grounds was not implicated in *Cooperstein* and *Wolgemuth*. Again, we conclude that prior decisions of this Court require us to reject this challenge.

¶ 14 In two *en banc* decisions—*Jeffrey v. Erie Ins. Exch.*, 423 Pa.Super. 483, 621 A.2d 635 (1993) (*en banc*) and its companion case *State Farm Mut. Auto. Ins. Co. v. Broughton*, 423 Pa.Super. 519, 621 A.2d 654 (1993) (*en banc*), *appeal granted*, 535 Pa. 638, 631 A.2d 1009—this Court addressed the public policy implications of a set-off provision under circumstances which, while not identical, we find to be analogous to this case. Specifically, the Court addressed the following issue: "[w]hether it is against the public policy of this Commonwealth for an insurer to reduce, dollar for dollar, the uninsured motorist coverage payments made to a guest passenger with liability coverage payments made under same policy to the same guest passenger if both the host driver and another uninsured driver are jointly liable for the injuries suffered by the passenger." *Jeffrey*, 621 A.2d at 637; *Broughton*, 621 A.2d at 654. After reviewing the relevant caselaw from this Commonwealth, the Uninsured Motorist Coverage Act, 40 Pa.S. § 2000 *et seq.*, and the MVFRL, the Court concluded that such a provision was not against public policy:

> [W]e are reluctant to find that a guest passenger, a class two insured, must have the ability to recover both uninsured benefits and liability benefits from the same policy without further guidance from our legislature or the Insurance Commissioner. The appellant's claim is predicated solely upon her occupancy of the insured's vehicle. The appellant did not have a contractual relation with the insurance company. She has neither paid premiums nor was a specifically designated beneficiary of the policy. We do not believe that a guest passenger can reasonably expect to receive the liability limits of the coverage and, additionally, uninsurance motorist benefits, from the same policy. As a guest passenger does not have a reasonable expectation that he can "stack" the insured's coverage, we do not believe one can expect to recover both under the liability coverage of the policy and the uninsurance coverage.

*Jeffrey*, 621 A.2d at 647.

¶ 15 While *Jeffrey* and *Broughton* addressed a claim for uninsured motorist coverage and the present case concerns a claim for underinsured motorist coverage, we conclude that the analysis in those cases is equally applicable here. As we have explained previously, uninsured and underinsured motorist coverage are intended to operate in the same way:

---

**6.** Indeed, the Court in *Wolgemuth* sanctioned an approach similar to that pursued by the Administrators here:

"Thus, had Gail M. Wolgemuth been injured in an accident caused by a second vehicle while she was a passenger in the vehicle insured by appellee, appellant would have been entitled to recover the available limit of liability coverage applicable to the vehicle which caused the accident, and, if not fully compensated, to recover underinsured motorist benefits under the policy issued by appellee to [the driver of the vehicle she was occupying]...."

*Wolgemuth*, 535 A.2d at 1149.

[O]ur legislature enacted underinsured motorist coverage to resolve the inequities which resulted when only uninsured motorist coverage was mandatory and a claimant who had purchased uninsured motorist coverage was involved in a car accident with an underinsured motorist rather than an uninsured motorist. Our legislature thus intended underinsured motorist coverage to operate in the same manner as uninsured motorist coverage only for motorists who were injured by underinsured motorists.

*Newkirk v. United Services Auto. Ass'n,* 388 Pa.Super. 54, 564 A.2d 1263, 1267 (1989). The negligent driver in the third vehicle, whether uninsured or underinsured, triggers un/underinsured motorist coverage on the host vehicle in the same manner. Further, section 1731(b) (mandating uninsured motorist coverage) and section 1731(c) (mandating underinsured motorist coverage) of the MVFRL are identical in all relevant respects.[7]

¶ 16 We can perceive nothing in the MVFRL that would suggest different policies underlie its mandate of uninsured or underinsured motorist coverage; nor can we discern any aspect of the analysis in *Jeffrey* or *Broughton* that would lead to a different result here. As in *Jeffrey* and *Broughton,* Bowersox is a "class two" insured as the Administrators' claim is based solely on his occupancy of the insured vehicle.[8] *See Jeffrey,* 621 A.2d at 644. Bowersox did not have a contractual relationship with Progressive, did not pay premiums, and was not a specifically designated beneficiary of the policy. The expectations of a guest passenger regarding uninsured versus underinsured motorist coverage could not reasonably be different. As a result, we must conclude that the governing principles behind *Jeffrey* and *Broughton* are equally applicable to this case where underinsured motorist coverage is sought.[9]

¶ 17 Another point of potential distinction between *Jeffrey* and *Broughton* and the present case is that in *Jeffrey* and *Broughton* the injured passenger was in the car driven by the negligent insured driver, whereas here the passenger was driven by a non-negligent insured driver, although insured under the same insurance policy as one of the negligent drivers. But in each of these cases, the driver of *another* vehicle was jointly liable, and this liability triggered the un/underinsured motorist coverage. And in each of these cases, the guest passenger sought both liability and un/underinsured motorist coverage from the same policy. Further, the expectations of a guest passenger regard-

---

7.   75 Pa.C.S.A. § 1731(b) provides:

**Uninsured motorist coverage.**—Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles. . . .

75 Pa.C.S.A. § 1731(c) provides:

**Underinsured motorist coverage.**—Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. . . .

8.   By contrast, a "class one" insured includes those specifically designated as an insured in the insurance policy and, while residents of the same household, their spouse and relatives. *See Jeffrey,* 621 A.2d at 644.

9.   While we are not faced with the situation where a class one insured has been denied coverage, and therefore need not address the matter, we note that in *Pempkowski v. State Farm Mut. Auto. Ins. Co.,* 451 Pa.Super. 61, 678 A.2d 398 (1996), *aff'd,* 548 Pa. 23, 693 A.2d 201 (1997) (per curiam), this Court extended the holdings in *Jeffrey* and *Broughton* and held that a set-off provision was enforceable against even a class one insured seeking uninsured motorist coverage under similar circumstances.

ing coverage could not reasonably be different regardless of whether he was driven by a negligent or non-negligent insured. For these reasons, we conclude that we are bound to extend the analysis of *Jeffrey* and *Broughton* to the facts of this case. As a result, we are constrained to hold that the set-off provision at issue here is not contrary to public policy principles represented by the MVFRL.[10] We therefore affirm the trial court on these grounds.

¶ 18 Although we are satisfied the conclusion we have reached here is dictated by the precedent of this Court, we feel compelled to highlight the harshness of this result. Under the MVFRL, an insured may not purchase uninsured or underinsured motorist coverage in amounts greater than the liability protection on the vehicle, 75 Pa.C.S.A. § 1736, unless a policy holder is insuring multiple vehicles and chooses to stack the uninsured or underinsured motorist coverage, *see id.* § 1738. *See also Pempkowski*, 678 A.2d at 403 n. 4. However, where only one vehicle is insured (and therefore the stacking option is not available) or where the stacking is not chosen (as was apparently the case here), and where the policy from which the un/underinsured coverage is sought also provides liability coverage for one of the joint tortfeasors (as here), the effect of these statutory constraints is such that a set-off provision like the one in this case operates to eliminate entirely the unin-

sured or underinsured motorist coverage (as this coverage cannot be greater than the liability coverage). The combined effect of this decision and *Jeffrey* and its progeny, which we find dictate this decision, is to approve an insurance policy provision that renders ineffectual coverage mandated under the MVFRL under such circumstances. However, absent further review by our Supreme Court or the Pennsylvania legislature, we are compelled to so hold.

¶ 19 Judgment affirmed.

---

**10.** While not binding, we consider two cases from the District Court for the Eastern District of Pennsylvania referred to by the parties. In *Continental Ins. Co. v. Kubek*, 86 F.Supp.2d 503 (E.D.Pa.2000), the insurance policy contained a set-off provision similar to the one at issue here, but the enforceability of that provision was not challenged. The second case, *Nationwide Mut. Ins. Co. v. Cosenza*, 120 F.Supp.2d 489 (E.D.Pa.2000), was recently reversed by the Court of Appeals for the Third Circuit. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197 (3d Cir.2001). The

Third Circuit held that a policy provision prohibiting "dual" recovery under both the liability and underinsured motorist provisions of the policy was violative of the MVFRL and therefore unenforceable. *Id.* at 212. However, this holding is not directly applicable in the instant case as the set-off provision here is more limited in effect than a provision prohibiting dual recovery; and, at any rate, we have concluded that the precedent of this Court controls our decision that the set-off provision is enforceable.