813 A.2d 828

**PROGRESSIVE NORTHERN INSURANCE COMPANY, Appellee**

v.

**Gene SCHNECK and Brenda L. Schneck, Individually and as Parents and Natural Guardians of Nathan and Ryan Schneck, Appellants.**

Supreme Court of Pennsylvania.

Argued May 14, 2002.

Decided Dec. 31, 2002.

218

David L. Lutz, Harrisburg, for appellants, Gene and Brenda Schneck.

James G. Nealon, Harrisburg, for appellee, Progressive Northern Ins. Co.

Before ZAPPALA, and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

*OPINION*

Justice EAKIN.

On November 18, 1997, Michelle Messner obtained an automobile insurance policy on a 1985 Dodge Omni from Progressive Northern Insurance Company. The policy provided underinsured motorist (UIM) bodily injury coverage in the amount of $15,000 for each person/$30,000 for each accident. The policy also contained a named driver exclusion, which stated:

> No coverage is provided for any claim arising from an **accident** or **loss** that occurs while a **covered vehicle** or **non-owned vehicle** is operated by the excluded driver(s). THIS INCLUDES ANY CLAIM FOR DAMAGES MADE AGAINST **YOU, A RELATIVE,** OR ANY OTHER PERSON OR ORGANIZATION THAT IS VICARIOUSLY LIABLE FOR AN **ACCIDENT** ARISING OUT OF THE OPERATION OF A **COVERED VEHICLE** OR **NON-OWNED VEHICLE** BY THE EXCLUDED DRIVER.

R.R., at 12a (emphasis in original). Michelle Messner named her husband, Christopher Messner, as an excluded driver under the policy since he had a suspended driver's license at the time. Ten days after Michelle obtained the policy, Christopher drove the car with appellants' minor children, Ryan and Nathan Schneck, as passengers; he had an accident which caused personal injuries to Ryan and Nathan. Appellants submitted a claim to Progressive for UIM benefits; Progressive denied the claim, asserting the policy excludes UIM coverage for accidents "that occur while the covered vehicle . . . is operated by the excluded driver." As Christopher was an excluded driver when the accident occurred, no UIM benefits were due.

Appellants demanded arbitration; Progressive filed a declaratory judgment action seeking to enforce the exclusion. Following discovery, both parties filed motions for summary judgment. Appellants contended that as a matter of public policy, the excluded driver provision should not be enforced; Progressive argued the contract was clear and unambiguous.

Relying on 75 Pa.C.S. § 1718(c) (permitting named driver exclusions), the trial court rejected appellants' public policy argument.[1] Further, the court deemed the insurance policy unambiguous, and granted Progressive's motion for summary judgment.

On appeal, the Superior Court rejected the argument that public policy renders the named driver exclusion unenforceable. *Progressive Northern Ins. Co. v. Schneck*, 769 A.2d 1217 (Pa.Super.2000) (unpublished memorandum). The court cited § 1718(c) as exemplifying the public policy for allowing such exceptions. The court noted the cost of UIM coverage would not have increased if Christopher were included on the policy, but the parties stipulated the cost of other coverage would have increased significantly if Christopher had been included; the net result of the exclusion was a lower premium. Relying on this Court's decision in *Paylor v. Hartford Insurance Co.*, 536 Pa. 583, 640 A.2d 1234 (1994), the Superior Court concluded the public policy implicated was one that favored the lowered cost of insurance.

We granted review to consider whether the named driver exclusion is ambiguous and whether the exclusion of UIM coverage is against public policy. *Progressive Northern Ins. Co. v. Schneck*, 566 Pa. 667, 782 A.2d 548 (2001).[2] Words

1. Section 1718(c) states:
 (c) Named driver exclusion—An insurer or the first named insured may exclude any person or his personal representative from benefits under a policy enumerated in section 1711 or 1712 when any of the following apply:
 (1) The person is excluded from coverage while operating a motor vehicle in accordance with the act of June 5, 1968 (P.L. 140, No. 78), relating to the writing, cancellation of or refusal to renew policies of automobile insurance.
 (2) The first named insured has requested that the person be excluded from coverage while operating a motor vehicle. This paragraph shall only apply if the excluded person is insured on another policy of motor vehicle liability insurance.
 75 Pa.C.S. § 1718(c).

2. Appellants also argue UIM coverage was not rejected in accordance with the language and form in 75 Pa.C.S. § 1731. *See id.*, § 1731(c.1); *Lewis v. Erie Ins. Exch.*, 568 Pa. 105, 793 A.2d 143, 155 (2002) ("[R]emedial prescriptions of Section 1731(c.1) ... apply solely in

in an insurance policy must be given a reasonable and normal interpretation. *Great American Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 412 Pa. 538, 194 A.2d 903, 905 (1963). Where the language of a policy is clear and unambiguous, a court is required to give effect to that language. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). The named driver exclusion here denies coverage for "any claim"; this language unambiguously operates to bar recovery of UIM benefits under policy when the driver is excluded.

Generally, courts are to go no further than the plain meaning of the contract language. However, such language is not controlling if it is contrary to a clearly expressed public policy. *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006, 1008 (1998). In *Eichelman*, we noted:

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy].

*Id.* (quotation and citations omitted).

The overarching public policy of the Motor Vehicle Financial Responsibility Law (MVFRL) is concern over the

circumstances in which an insurer attempts to enforce outright waiver/rejection of UM/UIM coverage."). This issue, however, is waived because it was not raised below. Pa.R.A.P. 302.

increasing cost of insurance premiums. *See Paylor,* at 1235. The Superior Court accurately concluded this public policy is exemplified by § 1718(c), which permits named driver exclusions. 75 Pa.C.S. § 1718(c). These exclusions are designed by insurers to avoid covering someone with a bad driving record or in a high-risk category, such as a teenage child of the insured, since the premium for such coverage would be exceedingly high. Validity, Construction, and Application of "Named Driver Exclusion" In Automobile Insurance Policy, 33 A.L.R.5th 121 (1995).

Appellants do not argue named driver exclusions are against public policy. Rather, appellants assert the named driver exclusion should not exclude UIM coverage; appellants argue the cost to Progressive to provide UIM coverage would have been nothing since the risk is population-based, not driver-based. Therefore, they argue, the public policy of insurance cost containment is not implicated. Instead, appellants suggest the public policy at issue is protection of the insured from the risk that a negligent driver of another vehicle will cause injury to the insured and will have inadequate insurance coverage to compensate the insured for his injuries. *See Eichelman,* at 1008–09 (citing *Paylor,* at 1235–36).

We recently observed, "[w]hile cost containment is not the only objective of the statute, it has become an increasingly significant one, and it is apparent that the General Assembly has been employing the vehicle of free consumer choice with greater latitude and frequency in furtherance of this objective." *Lewis,* at 154. Contrary to appellants' argument, cost containment is inextricably linked to UM/UIM coverage.

75 Pa.C.S. § 1731(a) requires policies to offer UM/UIM coverage in amounts provided in § 1734, which sets the amounts equal to or less than the limits of liability for bodily injury. The effect of the named driver exclusion was to set the limit of liability for bodily injury to zero. Permitting the recovery of UM/UIM benefits in excess of the liability coverage would be contrary to the statutory scheme of limiting

UM/UIM benefits to liability limits. *See* 75 Pa.C.S. § 1736 (limiting UM/UIM coverage increases no greater than limits of liability specified in bodily injury provisions).

Obviously, liability coverage for Christopher would have been costly, given his license suspension; Michelle limited the cost of premiums by electing to exclude Christopher from liability coverage. As the practical effect of the named driver exclusion was to provide Christopher with no liability coverage, then pursuant to §§ 1731 & 1734, UM/UIM coverage was also zero. To gain UM/UIM coverage under the policy for Christopher, he was required to purchase the cost prohibitive liability coverage. Therefore, to the extent a named driver exclusion operates to bar UM/UIM coverage because of foregone liability coverage, the result is consistent with the public policy of cost containment and consumer choice. *See generally Luechtefeld v. Allstate Ins. Co.*, 167 Ill.2d 148, 212 Ill.Dec. 224, 656 N.E.2d 1058, 1064 (1995) (indicating that, allowing an insured to claim UIM benefits in an amount greater than the limits of his liability coverage would be "repugnant to our system of justice," as it would allow him to "provid[e] more protection for himself than he was . . . willing to extend to the general public" (internal quotation marks omitted)).

Regardless, the public policy question remains. We have previously considered this issue in a somewhat different context. *See Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 648 A.2d 755 (1994). In *Hall,* the issue was whether a clearly defined territorial restriction on UIM coverage violated public policy. The UIM clause extended coverage in the United States, its territories and possessions, Puerto Rico, and Canada. The insured argued the territorial restriction violated public policy by not extending UIM coverage everywhere in the world.

The Court concluded merely because the purpose of UIM coverage was to protect innocent victims from irresponsible uninsured motorists, this did not elevate the purpose to dominant public policy. *Id.,* at 760–61; *see also Eichelman,* at 1010. Nor does the purpose nullify other considerations of statutory construction. *Id.,* at 761. Since UIM coverage is no longer mandatory and the MVFRL allows the exclusion of

UIM coverage, we stated: "The fact that a Pennsylvania motorist need not purchase uninsured motorist coverage even within the state of Pennsylvania undermines the argument that public policy in favor of protection against uninsured motorists has such force, dominance, and universality...." *Id.*, at 761 n. 2 (citing 75 Pa.C.S. § 1731(a)). Accordingly, we concluded worldwide UIM coverage was not mandated by public policy.[3] *Hall* recognizes UIM coverage is not mandated by public policy because there is no clear statutory requirement mandating UIM coverage. Consequently, a policy which limits or excludes UIM coverage is not a *per se* violation of public policy.

In *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 801 A.2d 516 (2002), an insurance policy excluded UIM coverage if the insured was injured while using a regularly used non-owned car. The insured was injured while in a company car and attempted to collect on her policy. Both parties agreed the exclusion would sever the portability of the UIM coverage unless such an exclusion violated public policy. The Court held voiding the exclusion would frustrate the public policy concern for the increasing costs of automobile insurance. *Id.*, at 521–22. The insured was attempting to get free UIM coverage on all vehicles (including her company car) by merely buying UIM coverage for the car she owned.

Moreover, it is clear that Appellees' contention takes the practical realities of insurance for granted. Several dynamics affect an insurer's risks pertaining to an insured's regular use of a non-owned car: the type of car; the safety features of the car; the cost of repairing and maintaining

---

**3.** *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.*, 567 Pa. 514, 788 A.2d 955 (2001), examined a UIM clause which explicitly excluded government vehicles, *i.e.*, no recovery of UIM benefits if the tortfeasor was a government entity. The insurers argued *Hall* required the policy exclusions to be permissible under the MVFRL. This Court rejected the argument and distinguished *Hall* because it concerned the portability of coverage and not the identity of the underinsured motorist. *Kmonk–Sullivan*, at 962 n. 6. Relying on 75 Pa.C.S. § 1703, we concluded the MVFRL did not permit the exclusion of all government vehicles. Therefore, such an exclusion in the policy was void as inconsistent with the statute. *Kmonk–Sullivan*, at 962.

the car; the miles regularly logged on the car; etc. To illustrate, if an insured's employer-provided car offered only nominal safety features, the risk of injury would be far greater than if the insured were driving a vehicle that boasted state-of-the-art safety features. In effect, the heightened risks increase the probability that damages will exceed a tortfeasor's liability policy and, thereby, trigger an insured's UIM coverage; once UIM coverage is invoked, the risks then increase the amount payable under the coverage. Here, these risks flowed with the employer-provided vehicle and not Mrs. Burstein; thus, it is illogical to conclude that the benefits should follow Mrs. Burstein without proper compensation to the insurer.

*Id.,* at 521–22. Consequently, the exclusion, which limited portability of UIM coverage, did not violate public policy. *Burstein* plainly holds that UIM coverage involves risk to the insurer. By limiting coverage, the insurer lowers its risk, and the cost of insurance is lessened. The outcome does not violate public policy; rather, it is favored.

 The authority of the courts to declare public policy is limited to only the clearest cases. *Mamlin v. Genoe,* 340 Pa. 320, 17 A.2d 407, 409 (1941). Given the indirect costs associated with obtaining UM/UIM coverage and the ability to reject such coverage, there is no clear legislative pronouncement of requiring public policy UM/UIM coverage for a named driver exclusion. We are compelled to enforce the unambiguous language of the named driver exclusion, which denies coverage "for any claim arising from an accident or loss that occurs while a covered vehicle or non-owned vehicle is operated by the excluded driver." Accordingly, the decision of the Superior Court is affirmed.

Order affirmed.

Justice NIGRO files a concurring opinion.

Justice NIGRO, concurring.

I agree with the majority that the named driver exclusion at issue is in accord with the public policy of this Commonwealth.

I write separately only to emphasize my agreement with the result reached in this case, where the driver was clearly excluded from policy coverage, did not pay for the coverage requested, and was at the time of the accident violating the motor vehicle laws of the Commonwealth. *See* 75 Pa.C.S. § 1543 (defining summary offense of driving while under suspension).